**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALAN DAVIS,**

                                        **Plaintiff,**

                    **v.**                                        **5:23-CV-675**
                                                                  **(FJS/MJK)**

**XPW WRESTLING INC.,**

                                        **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**SANDERS LAW GROUP**                     **CRAIG B. SANDERS, ESQ.**
333 Earle Ovington Boulevard
Suite 402
Uniondale, New York 11553
Attorneys for Plaintiff

**XPW WRESTLING INC.**                    **NO APPEARANCE**
Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND

**A.      Procedural Background**

        Plaintiff commenced this action after he discovered that Defendant had copied and

displayed one of his copyright-protected photographs without a license or permission in violation

of, among other things, 17 U.S.C. § 501.  *See* Dkt. No. 15-12, Memorandum of Law, at 7.  On

July 21, 2023, Plaintiff filed a request for a Clerk's entry of default against Defendant, *see* Dkt.

No. 7, which the Clerk entered the same day, *see* Dkt. No. 8.  On October 23, 2023, Plaintiff filed

the pending motion for entry of a default judgment.  *See* Dkt. No. 15.

Plaintiff contends that he is entitled to a default judgment because (1) Defendant has failed to answer or otherwise appear in this action, the time for Defendant to do so has expired, and such time has not been extended by Order of the Court; and (2) the complaint sets forth sufficient factual predicate to establish a *prima facie* claim for direct copyright infringement. *See id.* Furthermore, Plaintiff states that, by defaulting or otherwise failing to appear, Defendant is deemed to have admitted all well-pleaded factual allegations in the complaint. *See id.* Therefore, Plaintiff seeks entry of a default judgment in the amount of $20,719.50, comprised of the following amounts: (1) statutory damages in the amount of $12,500.00; (2) costs in the amount of $457.00; and attorney's fees in connection with the prosecution of this action in the amount of $7,762.50. *See id.* In addition, Plaintiff seeks a permanent injunction enjoining Defendant from continuing to use Plaintiff's copyrighted material. *See id.*

**B.    Factual background**

According to the complaint, Plaintiff is a professional photographer by trade, who is the legal and rightful owner of photographs that he licenses to online and print publications. *See* Dkt. No. 15-12, Memorandum of Law, at 9 (citing Complaint at ¶ 11; Davis Dec. at ¶ 3). Plaintiff states that he has invested significant time and money in building his photograph portfolio. *See id.* at 10 (citing Complaint at ¶ 13; Davis Dec. at ¶ 4). Plaintiff has also obtained active and valid copyright registrations from the United States Copyright Office ("USCO") that cover many of his photographs while others are the subject of pending copyright applications. *See id.* (citing Complaint at ¶ 14; Davis Dec. at ¶ 5). Plaintiff asserts that his photographs are original, creative works in which he owns protectable copyright interests. *See id.* (citing Complaint at ¶ 15; Davis Decl. at ¶ 6).

On December 16, 2018, Plaintiff authored a photograph of professional wrestling commentator Ron Niemi (the "Photograph").  *See id.* (citing Complaint at ¶¶ 16-17; Davis Dec. at ¶ 13).  Plaintiff applied to register the Photograph with the USCO on or about March 11, 2019, under Application No. 1-7495355921, and the Photograph was subsequently registered under Registration No. VA 2-142-919 on March 11, 2019.  *See id.* (citing Complaint at ¶ 19; Davis Dec., Exhibit 1, "Certificate of Registration").

Defendant is a professional wrestling promotion company that owns and operates a social medial account on Facebook at www.facebook.com with the name "The XPW Wrestling" ("FB Account").  *See id.* (citing Complaint at ¶ [3]).  Defendant also owns and operates a social media account on Instagram at www.instagram.com with the name "thexpwwrestling" ("IG Account") and on Twitter at www.twitter.com with the name "@Thexpwwrestling" ("TW Account").  *See id.* (citing Complaint at ¶¶ 4-5 (the FB Account, IG Account, and TW Account may be hereinafter collectively referred to as the "Accounts")).  According to Plaintiff, the Accounts are part of and used to advance Defendant's commercial enterprise.  *See id.* (citing Complaint at ¶ 23).  These Accounts are also used to advertise and promote Defendant's sponsored wrestling events as well as Defendant's associated merchandise and, upon information and belief, Defendant profits from these activities.  *See id.* (citing Complaint at ¶ 25).

On October 13, 2022, Plaintiff saw his Photograph on the Accounts.  *See id.* (citing Complaint at ¶ 36; Davis Dec. at ¶ 29).  Defendant displayed the Photograph on FB Account at URL:https://www.facebook.com/photo.php?fbid=562040022403542&set=pb.100057926485268 .-220752000.&type=3 *See id.* at 11 (citing Dkt. No. 1-2; Complaint at ¶ 26; Davis Dec. at ¶ 33). On October 20, 2022, Defendant posted the Photograph to FB Account.  *See id.* (citing Dkt. No. 1-2; Complaint at ¶ 27; Davis Dec. at ¶ 33).

On October 13, 2022, Defendant also posted the Photograph on TW Account.  *See id.* (citing Dkt. No. 1-2; Complaint at ¶ 30; Davis Dec. at ¶ 34).  On October 13, 2022, Defendant also posted the Photograph to IG Account.  *See id.* (citing Dkt. No. 1-2; Complaint at ¶ 33; Davis Dec. at ¶ 35).  Finally, on November 10, 2022, Defendant posted the Photograph to IG Account.  *See id.* (citing Dkt. No. 1-2; Complaint at ¶ 34; Davis Dec. at ¶ 35).

Plaintiff contends that each infringing use is an exact copy of the vast majority of Plaintiff's original image, which Defendant directly copied and displayed on the Accounts.  *See id.* (citing Complaint at ¶ 41; Davis Dec. at ¶ 30).  Defendant did not obtain a license or other permission from Plaintiff to feature the Photograph on its Accounts.  *See id.* (citing Complaint at ¶ 39; Davis Dec. at ¶ 36).  Plaintiff states, on information and belief, that Defendant received a financial benefit directly attributable to the infringements.  *See id.* (citing Complaint at ¶ 47.  Again, on information and belief, Plaintiff asserts that the Infringement increased traffic to the Accounts and, in turn, caused Defendant to realize an increase in the revenues generated via Defendant's sponsored events and/or merchandise sales.  *See id.* (citing Complaint at ¶ 48).  Finally Plaintiff contends that, on information and belief, a large number of people have viewed the unlawful copies of the Photograph on the Accounts.  *See id.* (citing Complaint at ¶ 49).

Plaintiff asserts that he did not authorize Defendant's use of the Photograph and did not license the right to use his Photograph to Defendant in any manner.  *See id.*  Notwithstanding the foregoing, Defendant arrogated to itself the right to copy, store and display that which did not belong to Defendant.  *See id.* at 12.  As a result of Defendant's misconduct, Plaintiff contends that he has been substantially harmed insofar as he has been deprived of his right to control the use of his Photograph and to determine the value of the same.  *See id.*  Plaintiff, through his counsel, notified Defendant on February 28, 2023, by electronic mail of the unlawful use of

Plaintiff's Photograph.  *See id.* (citing Complaint at ¶ 37).  Despite notification of its unlawful activities, however, Defendant continued to display Plaintiff's Photograph in furtherance of its commercial activities on each of the Accounts.  *See id.*

## II. DISCUSSION

**A.    Liability**

By failing to answer the complaint or oppose Plaintiff's motion for entry of a default judgment, Defendant is deemed to have admitted the factual allegations in the complaint.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (finding that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability").

Whether to enter a default judgment, however, is committed to the court's discretion.  *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citation omitted).  "Even where a defendant has admitted all well-pleaded facts in the complaint by virtue of default, a district court 'need not agree that the alleged facts constitute a valid cause of action,' and may decline to enter a default judgment on that ground."  *Sadowski v. Urbanspotlite LLC*, No. 1:22-cv-00887 (BKS/DJS), 2023 WL 2838376, *2 (N.D.N.Y. Apr. 7, 2023) (Sannes, C.J.) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))).  In fact, "the Second Circuit has 'suggested that, prior to entering default judgment, a district court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law."'"  *Id.* (quoting [*Mickalis Pawn Shop*, 645 F.3d at 137] (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009))).

"The Copyright Act of 1976 grants copyright owners the exclusive right to reproduce their copyrighted work, to prepare derivatives of the work, and to sell copies of the work." *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 98 (S.D.N.Y. 2020) (citations omitted); *see also* 17 U.S.C. §§ 106-122.  To establish copyright infringement, a plaintiff must prove two elements: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)) (other citation omitted).

With regard to the first element, a "certificate of registration" made within five years after first publication of a work "constitute[s] prima facie evidence of the validity of the copyright[.]" 17 U.S.C. § 410(c).  If a party proffers a certificate of copyright registration, "'the party challenging the validity of the copyright has the burden to prove the contrary.'"  *Stern v. Lavender*, 319 F. Supp. 3d 650, 669 (S.D.N.Y. 2018) (quoting *Hamil Am. [Inc. v. GFI]*, 193 F.3d [92,] 98 [(2d Cir. 1999)].  In this case, Plaintiff alleges that he authored the Photograph on December 16, 2018, *see* Dkt. No. 1, Complaint, at ¶ 16, and registered it "with the Register of Copyrights on March 11, 2019," *see id.* at ¶ 19, and attaches a copy of the copyright registration to his motion for default judgment, *see* Dkt. No. 15-2.  Thus, Plaintiff has established ownership of a valid copyright.  *See Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 50-51 (S.D.N.Y. 2022) (finding that the first element of copyright infringement was met on a default judgment motion where the plaintiff "allege[d] that it [was] the owner of U.S. Copyright Registration numbers covering" the works at issue), *report and recommendation adopted by* 606 F. Supp. 3d 32 (S.D.N.Y. 2022)).

Next, to establish the copying element, "'the plaintiff must first show that his work was actually copied; second, he must establish a substantial similarity or that the copying amounts to an improper or unlawful appropriation.'" *Yague v. Visionaire Publ'g LLC*, No. 19-cv-11717 (LJL), 2021 WL 4894676, *1 (S.D.N.Y. Sept. 14, 2021) (quoting *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (internal quotation marks omitted)).

In this case, Plaintiff alleges that, "[w]ithout permission or authorization from Plaintiff, Defendant volitionally copied and/or displayed Plaintiff's copyright protected Photograph on the Accounts." *See* Dkt. No. 1, Complaint, at ¶¶ 35, 39. Plaintiff submitted screenshots of the Photograph and Defendant's allegedly infringing posts to his Complaint, which appear to be identical. *See* Dkt. Nos. 1-1, 1-2. Thus, the Court finds that Plaintiff's "allegations are sufficient to make out a claim for copyright infringement." *Yague*, 2021 WL 4894676, at *1 (citation omitted) (finding that the plaintiff's allegations established copyright infringement on a motion for default judgment where the work and the copied work were "identical").

## B.    Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund and Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). When considering a motion for default judgment, a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec.*

*(USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence . . . based . . . upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers*, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2); *Fustok*, 873 F.2d at 40).

### 1. Statutory damages

Plaintiff seeks to recover statutory damages in the amount of $12,500.00.  *See* Dkt. No. 15-12, Memorandum of Law, at 18-21.  Pursuant to the Copyright Act, a plaintiff may elect to recover an award of statutory damages, in lieu of actual damages, "in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  Furthermore, when the court finds "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2). "'Within these statutory limits, the Copyright Act affords the Court wide discretion.'"  *Broad. Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 155 (W.D.N.Y. 2019) (quotation omitted).

Within the Second Circuit, courts consider the following factors to determine the amount of statutory damages: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citing *N.A.S. Impor. Corp. v.*

*Chenson Enter., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)).  Furthermore, "courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid." *Broad. Music, Inc. v. Prana Hosp. Inc.*, 158 F. Supp. 3d 184, 199 & n.12 (S.D.N.Y. Jan. 21, 2016) (collecting cases).

As an initial matter, Defendant's "copyright infringement is deemed willful by virtue of [] [its] default." *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (citations omitted).  In light of Defendant's willful infringement, the first, fifth, and sixth factors weigh against Defendant.  *See Broad. Music, Inc. v. Metro Lounge & Café LLC*, No. 5:10-CV-1149 (NAM/ATB), 2013 WL 286361, *4 (N.D.N.Y. Jan. 24, 2013).  In addition, the Court cannot evaluate the second factor because Defendant has not appeared in this action.  *See Strike 3 Holdings, LLC v. Doe*, No. 18-cv-7323 (DRH) (SIL), 2021 WL 4896862, *3 (E.D.N.Y. Sept. 20, 2021) (noting that "it is impossible for the Court to ascertain what, if any, profits Defendant earned by infringing"), *report and recommendation adopted*, 2021 WL 4894161 (E.D.N.Y. Oct. 20, 2021).  With regard to third factor, Plaintiff has submitted a sworn declaration in which he states that he "would have charged Defendant a license fee of $2,500 for the Photograph, depending on the number of platforms on which Defendant wanted to feature the Photograph and for how long it wanted to use the Photograph."  *See* Dkt. No. 15-1, Plaintiff's Affidavit, at ¶ 41. Finally, the fourth factor weights in favor of statutory damages beyond actual damages because "an award of statutory damages could deter future infringements by the Defendant and third parties." *Farrington v. Fingerlakes1.com, Inc.*, No. 19-CV-6802-FPG, 2020 WL 7350336, *6 (W.D.N.Y. Dec. 15, 2020) (citation omitted).  In this regard, Plaintiff asks the Court "to find a multiplier of five (5) times the licensing fee [he] would have charged Defendant had Defendant sought a license to utilize [his] work to be an appropriate statutory award in this case, insofar as

[he] was advised that one of the purposes of a statutory award under the Copyright Act intended to encompass a punitive component so as to impress upon the infringer that it is cheaper to comply with Copyright, rather than to violate it." *See id.* at ¶ 48.

Having considered all of these factors, the Court finds that an award of $7,500 ($2,500 for each platform on which Defendant displayed the Photograph) in statutory damages is reasonable.  The Court also finds that an award of $7,500 in statutory damages serves the "compensatory and punitive" purposes of statutory damages.  *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986).  Finally, the Court finds that this award is within the range of awards in similar cases involving willful infringement of copyrighted photographs.  *See, e.g., Sadowski*, 2023 WL 2838376, at *4 (quadrupling the $1,800 annual license fee and awarding $7,200 in statutory damages); *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721-MKB-SJB, 2019 WL 312149, *8 (E.D.N.Y. Jan. 3, 2019) (awarding "just under five times [the] licensing fee' where the defendant willfully infringed the plaintiff's copyrighted photo by posting the photo on its website without the plaintiff's consent), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019); *Nat'l Photo Grp., LLC v. Bigstar Ent. Inc.*, No. 13 Civ. 5467 (VSB) (JLC), 2014 WL 1396543, *4 (S.D.N.Y. Apr. 11, 2014) (awarding statutory damages of $9,000 for willful infringement of a photo with a $3,000 licensing fee), *report and recommendation adopted*, 2014 WL 5051275 (S.D.N.Y. Oct. 8, 2014).

### 2. Attorney's fees and costs

Plaintiff seeks $7,762.50 in attorney's fees and $457.00 in costs for a total of $8,219.50. *See* Dkt. No. 15-12, Memorandum of Law, at 26; Dkt. No. 15-5, Declaration of Craig B.

Sanders.  Under the Copyright Act, a "court in its discretion may allow the recovery of full costs by or against any party other than the United States," which includes "a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  In determining the reasonableness of requested attorney's fees, "the Court begins by using the 'lodestar method' to calculate a 'presumptively reasonable fee.'"  *McGlynn v. Cools, Inc.*, No. 19cv03520 (GBD) (DF), 2020 WL 6561658, *4 (S.D.N.Y. July 1, 2020) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation omitted)).  "The lodestar is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'"  *Id.* (quotation omitted).  In the Second Circuit, there is a presumption in favor of the "forum rule," which requires courts to employ "'the hourly rates . . . in the district in which the reviewing court sits' in calculating the presumptive reasonable fee."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation and other citations omitted).  To rebut the presumption, a party seeking higher out-of-district rates "must make a particularized showing, not only that the selection of the out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result."  *Id.* at 176.

Courts may, after the initial calculation of the presumptively reasonable fee, adjust the total "when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Millea*, 658 F.3d at 167 (quoting *Perdue*, 559 U.S. at 554, 130 S. Ct. 1662)).  "[T]he fee applicant has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates."  *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (quotation omitted).

In this case, Plaintiff's counsel submitted a sworn declaration, which is supported by attached billing records, asserting that his firm expended a total of 23.1 hours on this case: (1) Craig B. Sanders, Founding Partner of Sanders Law, PLLC and Sanders Law Group, 2.7 hours; (2) Joshua D. Vera, an associate attorney, who received his J.D. and was admitted to the practice of law in New York in 2021, 15.3 hours; (3) Jonathan M. Cader, a senior associate who received his JD in 2001, 3.0 hours; (4) Laura Costigan, a paralegal, .4 hours; and (5) Courtney Smith, a paralegal, 1.7 hours.  *See* Dkt. No. 15-5 at ¶¶ 10-17.  Having reviewed the billing records, the Court finds that, although a little on the high side, the 23.1 hours expended on this case are reasonable for a default judgment in a copyright infringement case.  *See Sadowski*, 2023 WL 2838376, at *5 (finding that 8.5 hours "is a reasonable number of hours required by a motion for default judgment in a copyright infringement case" (citing *Broad. Music, Inc. v. DeJohn's on Lark, Inc.*, No. 19-cv-637, 2020 WL 1986903, *6 (N.D.N.Y. Apr. 27, 2020) (finding 28.9 hours working on a motion for default judgment in a copyright infringement case reasonable); *Broad. Music, Inc. v. Rider Rock's Holding LLC*, No. 16-cv-1398, 2017 WL 2992498, *3, 2017 U.S. Dist. LEXIS 109383 (N.D.N.Y. July 14, 2017) (finding 15.5 hours working on a motion for default judgment in a copyright infringement case reasonable)).

With regard to an appropriate hourly rate for this work, Plaintiff requests the following hourly rates: (1) $750.00 for Mr. Sanders, the founder and partner of his counsel's law firm; (2) $550.00 for Mr. Cader, a senior associate at the firm; (3) $250.00 for Mr. Vera, an associate at the firm; and (4) $125.00 for both paralegals at the firm.  *See* Dkt. No. 15-5, Declaration of Craig B. Sanders, at ¶¶ 10, 12, 14, 16, 17.  Plaintiff argues that these hourly rates are "well within the range of hourly billing for similarly experienced attorneys according with the Report of the Economic Survey (2021) for the American Intellectual Property Law Association (*see Exhibit 5*

*hereto*) as well as the rates set forth in the Laffey Matric chart of hourly rates for attorneys and paralegals in the **Washington D.C. area** that was prepared by the United States Attorney's Office to be used in fee-shifting cases (*Exhibit 6 hereto*)."  *See id.* at ¶¶ 10, 12,14 (emphasis added).  In addition, Plaintiff argues that all of the requested hourly rates "are reasonable because they reflect the market rate for services of similar quality and nature for the prosecution of copyright claims."  *See id.* at ¶ 18.

Although the Court may consider Plaintiff's counsel's experience in assessing a reasonable hourly rate, *see DeJohn's on Lark, Inc.*, 2020 WL 1986903, at *7 (collecting cases), the Court finds that Plaintiff's proposed hourly rates, which, at least in part, are based on "hourly rates for attorneys and paralegals in the Washington, D.C. area," do not take into account the reasonably hourly rate for attorneys in this District nor does Plaintiff argue that in-district counsel, who would receive a lower hourly rate, would produce a substantially inferior result.  Thus, the Court concludes that, in calculating the reasonable hourly rate for Plaintiff's attorneys and paralegals who worked on this case, the Court will use the reasonable rate for attorneys in this District.

In *Broad. Music, Inc. v. Rider Rock's Holding LLC*, 1:16-CV-1398 (TGS/ATB), 2017 WL 2992498 (N.D.N.Y. July 14, 2017), the court found that the requested hourly rate of $450.00 was "considerably higher than what is usually expected in the Northern District of New York."  *Id.* at *3; *see also Broad. Music, Inc. v. DeJohn's on Lark, Inc.*, No. 19-cv-637, 2020 WL 1986903, *7 (N.D.N.Y. Apr. 27, 2020) (collecting cases).  "'Cases in this district have found reasonable rates to generally be $275-$350 for experienced partners, $165-$200 for junior associates, and $90 for paralegals.'"  *Holick v. Cellular Sales of N.Y. LLC*, No. 12-CV-584 (DJS), 2021 WL 964206, *3 (N.D.N.Y. Mar. 15, 2021) (quotation and other citation omitted); *see also Sadowski*, 2023 WL

2838376, at *6 (finding that, "[a]s a result of Plaintiff's counsel's nearly two decades of experience and his status as a principal shareholder, which is presumably akin to a partner, [his requested $450 hourly rate should be reduced] to $350 per hour (citation omitted)).

Based on the hourly rates for attorneys and paralegals in this District, the Court finds that the following hourly rates are reasonable for the work that the following attorneys and paralegals performed in this case: (1) Mr. Sanders -- $350.00; (2) Mr. Vera -- $200.00; Mr. Cader -- $250.00; and (4) paralegals -- $90.00.  Multiplying these hourly rates by the number of hours that each of these individuals expended on this case results in a total award of **$4,944.00** in attorney's fees: (1) Mr. Sanders ($350.00 x 2.7 hours); (2) Mr. Vera ($200.00 x 15.3 hours); (3) Mr. Cader ($250.00 x 3 hours); and (4) Ms. Costigan and Ms. Smith ($90.00 x 2.1 hours).

Finally, Plaintiff seeks $457.00 in costs, which is comprised of $402.00 for the Complaint filing fee and $55.00 for service of process on Defendant.  *See* Dkt. No. 15-12, Memorandum of Law, at 25.  Plaintiff's billing records and the docket report substantiate these costs.  *See id.*; Dkt. No. 15-5, Declaration of Craig B. Sanders, at ¶ 21 & Exhibit 3 attached thereto.  Therefore, the Court finds that Plaintiff is entitled to recover these costs.  *See Sadowski*, 2023 WL 2838376, at *6 (citing *Sony BMG Music Ent. v. Larkin*, 08-cv-702, 2009 WL 2176641, at *2, 2009 U.S. Dist. LEXIS 62616 (N.D.N.Y. July 22, 2009) (awarding $480 for filing and service fees)).

Accordingly, the Court concludes that Plaintiff is entitled to recover a total of **$5,401.00** in attorney's fees and costs.

### 3. Injunctive relief

Plaintiff seeks a permanent injunction against Defendant under the Copyright Act enjoying Defendant from "displaying the Photograph on its Accounts or in any alternative medium under Defendant's control."  *See* Dkt. No. 15-12, Memorandum of Law, at 26.

"A court 'may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'"  *Kingvision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006) (quoting *Main Events/Monitor Prods. V. Batista*, No. 96-CV-5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998)).  Under the Copyright Act, a court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  A plaintiff who seeks an injunction must show the following: "'(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"  *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay, [Inc. v. MercExchange, L.L.C.,]* 547 U.S. [3]88, 391, 126 S. Ct. 1837[, 164 L. Ed. 2d 641 (2006)])  (noting that the *eBay* standard applies to copyright injunctions).  "'Generally, a plaintiff must show the threat of [a] continuing violation in order to be entitled to injunctive relief.'"  *Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2004) (quotation omitted).

All of these factors weigh in favor of granting Plaintiff's request for a permanent injunction enjoining Defendant from infringing the Photograph's copyright.  First, Plaintiff has

alleged and offered evidence that Defendant infringed his copyright, causing irreparable injury to Plaintiff. *See Rovio Ent. Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (finding that the plaintiff suffered irreparable injury where it obtained a default judgment that the defendant infringed its copyright and trademark). Furthermore, "Defendant's ability to continue [its] infringement absent an injunction shows that monetary damages are insufficient to provide Plaintiff with relief." *Malibu Media, LLC v. Doe*, No. 18-cv-0055 (DRH) (SIL), 2020 WL 2770921, *4 (E.D.N.Y. Apr. 20, 2020) (citing *Rovio Entm't, Ltd.*, 97 F. Supp. 3d at 547 (finding monetary damages insufficient to provide relief where there existed a danger that defendant might continue infringing), *report and recommendation adopted by* 2020 WL 2769412 (E.D.N.Y. May 28, 2020). Moreover, the balance of hardships favors Plaintiff because "'[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 500 (S.D.N.Y. 2018) (quoting *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015)). Finally, a permanent injunction would not disserve the public interest because "'the public has a compelling interest in protecting copyright owners' marketable rights to their work' so as to 'encourage the production of creative work.'" *Beastie Boys v. Monster Energy*, 87 F. Supp. 3d 672, 679 (S.D.N.Y. 2015) (quoting *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (citing, *inter alia*, *Golan v. Holder*, ___ U.S. ___, 132 S. Ct. 873, 890, 181 L. Ed. 2d 835 (2012); *Metro-Goldwyn-Mayer Studios*, 545 U.S. at 961, 125 S. Ct. 2764)).

For all these reasons, the Court grants Plaintiff's motion for a permanent injunction enjoining Defendant from continuing to store and/or display Plaintiff's Photograph on its Accounts or in any alternative medium under Defendant's control.

### III. CONCLUSION

Accordingly, having reviewed the entire file in this matter, Plaintiff's submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for entry of a default judgment, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court is directed to enter judgment in Plaintiff's favor against Defendant as follows:

(1) statutory damages in the amount of **$7,500.00**;

(2) attorney's fees in the amount of **$4,944.00**;

(3) costs in the amount of **$457.00**; and

(4) a permanent injunction enjoining Defendant from continuing to store and/or display Plaintiff's Photograph on its Accounts or in any alternative medium under Defendant's control;

and the Court further

**ORDERS** that Plaintiff shall serve a copy of this Memorandum-Decision and Order on Defendant by regular mail at Defendant's last known address and file a certificate of service upon completion of such service.

**IT IS SO ORDERED**.

Dated: June 18, 2024
        Syracuse, New York

Frederick J. Scullin, Jr.
**Senior United States District Judge**

- 17 -